UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STERLING FIRE RESTORATION, LTD., an Illinois corporation, <br><br> Plaintiff, <br><br> vs. <br><br> WACHOVIA BANK N.A. n/k/a WELLS FARGO BANK N.A., JPMORGAN CHASE BANK N.A., CHUBB & SON, a division of FEDERAL INSURANCE COMPANY, and YORK RISK SERVICES GROUP, INC., <br><br> Defendants. <br><br> YORK RISK SERVICES GROUP, INC., and CHUBB & SON, a division of FEDERAL INSURANCE COMPANY, <br><br> Counter-Plaintiffs/ <br> Third-Party Plaintiffs, <br><br> vs. <br><br> STERLING FIRE RESTORATION, LTD., KNV INVESTMENT CORPORATION d/b/a EXECUTIVE PLAZA HOTEL AND BEST GARDENS RESTAURANT, and MIDWEST RESTORATION SERVICES, <br><br> Counter-Defendant/ <br> Third-Party Defendants. | 12 C 3530 <br><br> Judge Feinerman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sterling Fire Restoration, Ltd., brought this suit under state law against Defendants Wells Fargo Bank N.A., JPMorgan Chase Bank N.A., Chubb & Son, and York Risk Services Group, Inc. Doc. 1. Sterling alleges that Chubb and York ("the Insurers") acted negligently by paying insurance proceeds to the insured party rather than to Sterling, to which

the insured owed money, and also that Chubb tortiously interfered with Sterling's contract with the insured. Sterling further alleges that Wells Fargo and Chase ("the Banks") were negligent and violated § 3-110(d) of Uniform Commercial Code ("UCC"), 810 ILCS 5/3-110(d), by accepting and paying out on two checks that had been endorsed by only one of the checks' named payees. The Insurers filed a counterclaim against Sterling and a third-party claim against KNV Investment Corporation and Midwest Restoration Services. The Insurers and the Banks have separately moved to dismiss Sterling's claims under Federal Rule of Civil Procedure 12(b)(6). Docs. 12, 24.

The Insurers' motion is granted, and the Banks' motion is granted in part and denied in part. The negligence claims against the Insurers fail because the Insurers did not owe Sterling any relevant duty, and the tortious interference claim against Chubb fails because the complaint does not allege that Chubb intended to induce or otherwise cause the insured party to breach that party's contract with Sterling. Sterling may not proceed on its UCC claims against the Banks as to the first check because Sterling was not a named payee on that check, but it may proceed as to the second check, on which it was a named payee. Sterling's negligence claims against the Banks, which track its UCC claims, fail because the common law cause of action for negligence is displaced by the UCC under the circumstances of this case.

**Background**

The complaint's well-pleaded factual allegations, though not its legal conclusions, are assumed to be true on a Rule 12(b)(6) motion. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012); *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763 (7th Cir. 2010). The facts are construed in the light most favorable to Sterling, the non-moving party. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). In evaluating a Rule 12(b)(6) motion, the court must consider

"the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The court also must consider additional facts set forth in Sterling's opposition brief or supported by attachments to the brief, so long as those facts "are consistent with the pleadings." *Ibid*. The following sets forth the facts as favorably to Sterling as permitted by the complaint and other materials that may be considered on a Rule 12(b)(6) motion.

Sterling's business is the repair and restoration of buildings that have been damaged by fire or water. Doc. 1-1 at ¶ 1. In 2011, Sterling contracted with Violet Shim to provide these services for Shim's property, which had been damaged by a fire. *Id*. at ¶ 2. Sterling completed the work and fulfilled its obligations under its contract with Shim. *Id*. at ¶ 3.

Chubb is an insurance provider, and Shim's property was covered by a Chubb policy. *Id*. at ¶¶ 4-5. Chubb knew that Sterling had agreed to perform the repairs, and Chubb also knew that Sterling and Shim had contracted for Sterling to receive the full insurance proceeds paid by Chubb to Shim. *Id*. at ¶¶ 5, 7. The contract between Sterling and Shim stated that "Owner [Shim] hereby authorizes its insurance company [Chubb] to include Sterling as a payee on all checks issued under the insurance policy"; the contract did not require Chubb to include Sterling as a payee, and indeed the Insurers were not parties to the contract. *Id*. at p. 16. York's role was to act as Chubb's agent by issuing checks on Chubb's behalf to cover insured losses. *Id*. at ¶ 6. Like Chubb, York was aware of Sterling's contract with Shim, including Sterling's contractual entitlement to receive the insurance proceeds paid to Shim by Chubb. *Ibid*.

Sterling sent Chubb and York a letter directing them to include Sterling as a payee on any checks issued to Shim. *Id*. at ¶ 8. Chubb (acting through York) did not abide by that direction

on the first check, for $118,259.46, which was made payable to "KNV Investment Corp d/b/a Executive Plaza Hotel & Best Gardens Restaurant & Foster Bank" and sent to Shim. *Id*. at ¶ 9 & p. 20. Shim endorsed the first check on KNV's behalf and presented it to Chase for payment; Chase accepted the check and sent it to Wells Fargo, which paid the full amount to Shim or KNV. *Id*. at ¶¶ 9-10. The other payee named on the first check, Foster Bank, did not endorse the check and was unaware that it had been presented for payment. *Id*. at ¶ 10. Sterling, which was not a named payee on the check, was unaware that the check had been issued. *Ibid*.

After Shim deposited the first check, Sterling informed Chubb and York that Shim had negotiated the check without Foster Bank's knowledge or consent and advised Chubb and York not to issue further checks to Shim or KNV because it appeared to Sterling that Shim did not intend to pay Sterling for the services Sterling had performed under its contract with Shim. *Id*. at ¶¶ 11-12. Despite Sterling's warning, Chubb (again through York) issued a second check, this one for $104,724.08, payable to "KNV Investment Corp dba Executive Plaza Hotel & Best Gardens Restaurant and Sterling Fire Restoration Ltd. and Midwest Restoration Services," and sent it to Shim. *Id*. at ¶¶ 13, 15; *see also id*. at p. 23. Sterling was a named payee on this check. The third named payee, Midwest Restoration Services, was one of Sterling's subcontractors; like Sterling, Midwest has not been paid for its work on Shim's property. *Id*. at ¶ 16. Shim endorsed the check in KNV's name and presented it to Chase, and it was paid by Wells Fargo. *Id*. at ¶ 14. At the time, Sterling and Midwest were unaware that the check had been issued; neither endorsed the check or consented to have it paid to Shim and KNV. *Id*. at ¶ 17.

The two checks, which total $222,983.54, are the entire insurance proceeds for the property damage repaired by Sterling, and Sterling's contract with Shim entitled Sterling to that money. *Id*. at ¶ 18. Shim has not complied with Sterling's numerous demands for payment. *Id*.

at ¶ 20. Having struck out with Shim, Sterling brought this suit in state court against the Banks and the Insurers, *id*. at pp. 4-15, and Defendants removed the suit to this court, Doc. 1. The removal was proper. This court has diversity jurisdiction because the parties are completely diverse and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332(a), and no defendant is a citizen of Illinois, where the state court action was filed, *see id*. § 1441(b)(2).

## Discussion

The parties do not explicitly address choice of law, but their briefs focus on Illinois law, so that is the law the court will apply. *See McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 586 (7th Cir. 1998). The court will address Sterling's claims in turn.

### I.   Claims Against the Insurers

#### A.   Negligence

Sterling alleges that the Insurers acted negligently by sending the checks to Shim, by making them payable to Shim's company, KNV, and by not naming Sterling as a payee on the first check. Sterling demanded that the Insurers include Sterling as a payee on all checks for the insurance proceeds, and after Shim deposited the first check, Sterling told the Insurers not to issue any further checks to Shim or KNV. Sterling believes that had the Insurers followed its instructions, Shim would not have been able to keep for herself the money that she owes to Sterling. Sterling also believes that the Insurers failed to use reasonable care when they disregarded its instructions.

"To establish a claim for negligence under Illinois law, a plaintiff must prove the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Swearingen v. Momentive Specialty Chems., Inc.*, 662 F.3d 969, 972 (7th Cir. 2011); *accord Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011)

(same).  The Insurers contend that they cannot be liable in negligence because they owed no duty to Sterling that could have been breached by their alleged acts and omissions.  "Duty and liability are distinct concepts that must be separately considered.  Where there is no duty owed, there can be no liability."  *Swearingen*, 662 F.3d at 972 (citation omitted).  "The touchstone of the duty analysis is to ask whether the plaintiff and defendant stood in such a relationship to one another that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff."  *Krywin v. Chi. Trans. Auth.*, 938 N.E.2d 440, 447 (Ill. 2010).  Whether a duty exists in a particular case is a question of law.  *See Swearingen*, 662 F.3d at 972.

The complaint alleges that the Insurers "owed a duty to Sterling to pay it the insurance proceeds for damages to the structure and contents of the Property pursuant to the Contract" between Sterling and Shim.  Doc. 1-1 at ¶¶ 46, 53.  This allegation is a legal conclusion, not a factual allegation, and therefore it need not be assumed to be true on a Rule 12(b)(6) motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 657 F.3d 496, 502 (7th Cir. 2011) ("We are not, however, bound to accept as true a legal conclusion couched as a factual allegation.").  The court must determine as a matter of law whether the Insurers, having been asked by Sterling to make the checks payable to Sterling and not to issue the second check to Shim or KNV, and having been warned that Shim might try to violate her contract with Sterling by keeping the insurance proceeds for herself, had a duty under Illinois law to comply with Sterling's requests and to ensure that Sterling received the proceeds.

Illinois law imposed no such duty on the Insurers. Although Shim contracted with Sterling to pay Sterling the insurance proceeds, the Insurers were not parties to that contract or to any contract that obligated them to act on Sterling's behalf. It likely is for this reason that Sterling does not rely on contract law to support its view regarding the duty that it believes Illinois law imposed on the Insurers. Doc. 34 at 9 ("[t]he Defendants are liable because they owed Sterling a duty that existed independent of" the contract between Sterling and Shim). Rather, Sterling contends that if A owes B money and B owes the same amount to C, and C suspects that B is not going to pay him, C can direct A to pay C directly and thereby impose a tort duty on A to pay C or face a negligence suit for paying B instead. Yet Sterling has not cited, and the court has not discovered, any authority suggesting that Illinois law imposes such a duty in the absence of a contract. Sterling cites only very general Illinois cases on the concept of duty in negligence law—which do Sterling no good because they do not address circumstances comparable to those presented here—and the Restatement (Second) of Torts § 323 (1965), which does deserve brief consideration.

Section 323 of the Restatement, titled "Negligent Performance of Undertaking to Render Services," states this familiar principle of tort law:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a)   his failure to exercise such care increases the risk of such harm, or
>
> (b)   the harm is suffered because of the other's reliance upon the undertaking.

Section 323 is an exception to the more general rule, embodied by § 314 of the Restatement, that "[t]he fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." Restatement (Second) of Torts § 314 (1965); *see Jackson v. City of Joliet*, 715 F.2d 1200, 1202-03 (7th Cir. 1983). Section 323 is doubly inapplicable to the Insurers' alleged misconduct. The section provides for liability only for "physical harm" to the plaintiff's "person or things," while Sterling alleges only pecuniary harm. And § 323 applies only where the defendant has "undertake[n] … to render services" to the plaintiff, while Sterling does not allege that the Insurers ever committed, agreed, or otherwise undertook to ensure that Sterling would receive the insurance proceeds. If neither § 323 nor any other exception to § 314 applies here—and § 323 is the only exception cited by Sterling—then the general principle embodied by § 314, that persons are not obligated to take action to protect others, should control. Section 314 is the law in Illinois. *See Iseberg v. Gross*, 879 N.E.2d 278, 284-85 (Ill. 2007); *Cuyler v. United States*, 362 F.3d 949, 953 (7th Cir. 2004). Accordingly, the Insurers did not owe Sterling a duty to pay it the insurance proceeds they owed Shim under the insurance contract or to take any other action to ensure that Sterling received those proceeds.

The court has little doubt that this result is correct. To the extent there is any doubt, it would have to be resolved against Sterling. No Illinois case of which the parties or the court is aware has recognized the theory of negligence liability advanced by Sterling. Adopting that theory in this case would broaden the Insurers' negligence liability under Illinois law. The Seventh Circuit has repeatedly cautioned, however, that "[w]hen we are faced with two opposing and equally plausible interpretations of state law, we generally choose the narrower interpretation which restricts liability, rather than the more expansive interpretation which

creates substantially more liability." *Home Valu, Inc. v. Pep Boys–Manny, Moe & Jack of Del., Inc.*, 213 F.3d 960, 963 (7th Cir. 2000); *accord, e.g.*, *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 636 (7th Cir. 2007); *S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation and Sheet Metal Co.*, 302 F.3d 667, 676 (7th Cir. 2002); *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000); *Birchler v. Gehl Co.*, 88 F.3d 518, 521 (7th Cir. 1996); *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994) (en banc). This principle governs where, as here, the defendant removes to federal court a case initially filed in state court. *See Pisciotta*, 499 F.3d at 636 n.5 ("We have applied this restrictive approach to a plaintiff's novel theory of liability under state law even where the plaintiff had no choice but to litigate his claim in federal court."); *Insolia*, 216 F.3d at 607 (although "[t]he plaintiffs are in a predicament because state law in this area is stunted by the ability of [the defendants] to remove cases under diversity jurisdiction[,] … that does not justify the federal courts imposing a new tort claim on Wisconsin").

Therefore, even if the duty issue were close under Illinois law, the court would resolve that issue in the Insurers' favor and dismiss the negligence claims against them. *See Cuyler*, 362 F.3d at 953 ("Needless to say, we have no authority to create good Samaritan liability under Illinois law."). Because the flaw in those claims cannot be remedied by repleading, the dismissal is with prejudice.

### B. Tortious Interference with Contract

Sterling claims that by not naming Sterling as a payee on the first check, Chubb tortiously induced Shim to keep the insurance proceeds for herself and thereby to violate her contract with Sterling. A tortious interference with contract claim under Illinois law has five elements: "(1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified

inducement of a breach; (4) defendant's wrongful conduct caused a subsequent breach of the contract by the third party; and (5) damages." *Echo, Inc. v. Timberland Machs. & Irrigation, Inc.*, 661 F.3d 959, 968 (7th Cir. 2011); *see also Complete Conference Coordinators, Inc. v. Kumon N. Am., Inc.*, 915 N.E.2d 88, 93 (Ill. App. 2009).

Chubb argues that the complaint does not adequately plead the third element, the intentional and unjustified inducement of a breach. "Establishing inducement, in the context of a claim for tortious interference with a contract, requires some active persuasion, encouragement, or inciting." *In re Estate of Albergo*, 656 N.E.2d 97, 103-04 (Ill. App. 1995) (internal quotation marks omitted). Chubb's alleged acts do not amount to the intentional and unjustified inducement of Shim's breach. The complaint does not allege that Chubb intended for Shim to breach her contractual obligations to Sterling or that Chubb suggested to Shim that she should breach. All the complaint says on inducement is that "Chubb interfered with Sterling's ability to recover for repair work completed pursuant to its written contract with Shim by not including naming [sic] Sterling on all insurance proceeds checks." Doc. 1-1 at ¶ 63. At most, the alleged facts suggest that Chubb, by not naming Sterling on both checks, failed to prevent Shim from breaching her contract with Sterling. Chubb's failure to go out of its way to protect Sterling was not an intentional inducement to Shim to violate her contract with Sterling. Absent any allegation that Chubb intended Shim to breach her contract with Sterling and intended to induce such breach, Sterling has failed to state a tortious interference claim. *See Great Cent. Ins. Co. v. Ins. Servs. Office, Inc.*, 74 F.3d 778, 785 (7th Cir. 1996) (declining to expand "the tort of interference with contract to include negligent interference"); *Ill. Bell Tel. Co. v. Plote, Inc.*, 778 N.E.2d 1203, 1211 (Ill. App. 2002) ("Plote has not pled that Bell *intentionally* caused Plote to

breach its contract with [the Illinois Department of Transportation] or that Bell *intended* to cause Plote harm. The trial court's dismissal of [the tortious interference count] was thus correct.").

The two authorities cited by Sterling do not warrant a different result. In *Fidelity National Title Insurance Co. of New York v. Intercounty National Title Insurance Co.*, 161 F. Supp. 2d 876, 885 (N.D. Ill. 2001), the court declined to dismiss a tortious interference claim where the defendant was alleged to have intentionally assisted the plaintiff's contractual counter-party to violate its contract with the plaintiff; by contrast, Sterling does not allege that Chubb intended to assist Shim to breach her contract with Sterling. The Restatement (First) of Torts § 766 (1939) is explicit that tortious interference entails "induc[ing] or otherwise purposely caus[ing] a third person not to ... perform a contract." As the successor provisions makes clear, "[o]ne is not liable to another for pecuniary harm not deriving from physical harm to the other, if that harm results from the actor's negligently (a) causing a third person not to perform a contract with the other …." Restatement (Second) of Torts § 766C (1979); *see also Santucci Const. Co. v. Baxter & Woodman, Inc.*, 502 N.E.2d 1134, 1137-38 (Ill. App. 1986) ("recognition of a cause of action for such tortious interference with contractual relations ... in Illinois has been for an intentional interference and has not been extended to negligent interference").

Because Chubb is not alleged to have purposefully induced or caused Shim to breach her contract with Sterling, the tortious interference claim must be dismissed. The dismissal is without prejudice to Sterling's attempting to replead the claim.

## II. Claims Against the Banks

### A. Uniform Commercial Code § 3-110(d)

Sterling alleges that the Banks violated § 3-110(d) of the UCC by accepting and paying the two checks even though the checks had been endorsed by only one of the named payees. Section 3-110(d) provides:

> If an instrument is payable to 2 or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to 2 or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them.

810 ILCS 5/3-110(d). The checks were payable to two or more persons "not alternatively"—that is, jointly—because the payees' names were joined by the conjunctive "and" rather than the disjunctive "or." *See* 810 ILCS 5/3-110, Uniform Commercial Code Comment 4 ("An instrument payable to X and Y is governed by the second sentence of subsection (d)."). Accordingly, § 3-110(d) allowed for the checks to be negotiated or enforced only by all of the named payees. Yet the Banks accepted and paid on both checks with the endorsement of only one of the named payees, Shim acting for KNV.

#### 1. The First Check

Nonetheless, Sterling is not entitled to pursue its § 3-110(d) claims as to the first check because Sterling was not a named payee on that check; KNV and Foster Bank were the only two named payees. Doc. 1-1 at ¶ 9. In *American National Insurance Co. v. Citibank, N.A.*, 543 F.3d 907 (7th Cir. 2008) ("*ANICO*"), the Seventh Circuit confronted a similar situation. The plaintiff, ANICO, had engaged a third party, National Accident Insurance Underwriters, to act as ANICO's agent in managing an insurance pool. Pursuant to that engagement, Underwriters collected premium payment checks from the insurance pool's members, which were made

payable to Underwriters, and managed the trust account into which the checks were deposited. It turned out that an Underwriters officer intercepted many of the premium checks, changed the payee line to replace Underwriters with his own name, and deposited the checks in his personal Citibank account. When the embezzlement was discovered and ANICO was unable to recover the loss from the embezzler, ANICO sued Citibank under § 3-420 of the UCC, 810 ILCS 5/3-420, for accepting the checks. The Seventh Circuit rejected the claim because ANICO could not establish its "ownership of, interest in or right to possession of the check" under Illinois law. *ANICO*, 543 F.3d at 909.

The Seventh Circuit's rationale is instructive here. ANICO argued that although it was not the named payee on the checks, it was the checks' "true owner" because it held an equitable interest in the funds, *id*. at 909-10—which is the same argument that Sterling makes here, Doc. 34 at 11-12 (asserting "third-party beneficiary status" as to the first check). The Seventh Circuit rejected this argument, holding that ANICO had no enforceable interest in the checks:

> [ANICO's] novel interpretation of the familiar drawer-drawee-indorsee-payee relationship is unprecedented, and for good reason: it betrays the fundamental axiom of negotiable instruments that banks must pay the payee. … ANICO seems oblivious to the burden that its theory would put on every bank that was presented a check for negotiation. Instead of being able to look at the payee line and to verify that the person presenting the check was indeed entitled to do so, banks in ANICO's world would need to conduct a full-blown investigation every time to make sure that a party with an equitable interest in the check was not lurking in the background. Such a system would bring commercial transactions to a grinding halt. …
>
> ANICO appears to be confusing an interest in the funds backing the checks with an interest in the checks themselves. Perhaps it is the ultimate beneficiary of the funds. Once Underwriters received the checks, it owed ANICO most of the money, according to the terms of a separate contract. The terms of this debt, however, are tied to this ancillary contract, not the negotiable instruments in question. …

> The payee does have a property interest in checks made out to her, as does the indorsee. ANICO is neither and has not succeeded in showing how the "true owner" entity it posits fits into the real world of payees, drawers, drawees, and indorsees. These roles carry specific and well established meanings: for the reasons we have already mentioned, banks cannot be asked to go beyond the name on the payee line except where due care demands it. If banks were required to look behind the names on the check itself and delve into the contractual relationships of named payees and other, unnamed entities, writing checks would become an impossibility. It is precisely in order to maintain a workable financial system that the UCC does not resort to generalities like the "true owner" and instead insists on terms of art like "payee."

543 F.3d at 909-10. Sterling does no better than ANICO at showing how its alleged status as the equitable "true owner" of the funds backing the first check gives it an enforceable interest in the check itself. This is not to say that the Banks did not violate § 3-110(d) when they accepted the first check absent Foster Bank's endorsement. But under *ANICO*, any suit for that alleged violation may be brought only by the named payee—Underwriters in *ANICO*, and Foster Bank here—rather than by a party lacking any legally cognizable interest in the check. *See id*. at 910. Like ANICO, Sterling had no interest in the first check that the Banks were required to recognize, and so it cannot sue under the UCC for any misstep the Banks may have made when accepting and paying on that check.

Sterling argues that *ANICO* is inapposite because there "the checks on their face appeared to be correctly payable to the person presenting and negotiating the checks," while here "the presented checks clearly lacked sufficient endorsements because not all the named payees had endorsed either check." Doc. 34 at 6. That is, Sterling reads *ANICO* to hold that Citibank "did not violate the UCC because when it received fraudulently altered checks, there was no reason for the bank to know that all payees had not endorsed the check." *Id*. at 5; *see also id*. at 12. Sterling misreads *ANICO*, and the distinction Sterling advances—between the facial defect

of a check not endorsed by all named payees, and the less easily detected defect of a check fraudulently altered to change the named payee—has no basis in the Seventh Circuit's opinion. *ANICO* did not suggest that Citibank was not liable because the checks it accepted were facially valid, and nor did it rely on the difficulty that Citibank might have had in detecting the fraud. The Seventh Circuit had no reason to determine, and did not determine, whether Citibank was liable under § 3-420; this is because any liability would be to the checks' named payee, Underwriters, rather than to ANICO. *ANICO*, 543 F.3d at 910.

Sterling's UCC claims accordingly are dismissed to the extent they pertain to the first check. Because this flaw cannot be cured by repleading, the dismissal is with prejudice.

### 2. The Second Check

The Banks' sole argument for dismissing Sterling's UCC claims as to the second check, on which Sterling *was* a named payee, is that Sterling must join the other named payees (KNV and Midwest) as plaintiffs and failed to do so. The Banks explicitly disclaim the joinder requirements of Rule 19(b) as a basis for their argument. Doc. 36 at 3 n.1. Instead, the Banks rely on language in § 3-110(d) providing that "[i]f an instrument is payable to 2 or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced *only by all of them*." 810 ILCS 5/3-110(d) (emphasis added). According to the Banks, the emphasized text requires that all payees be joined in a lawsuit under § 3-110(d) for wrongful acceptance and payment of a check.

Section 3-110(d) imposes no such requirement because Sterling is not seeking to "negotiate[], discharge[], or enforce[]" the second check. "'Negotiation' means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." 810 ILCS 5/3-201(a). To "discharge" a check is

to remove the obligation of a party to pay on that instrument. *See* 810 ILCS 5/3-601(a) ("The obligation of a party to pay the instrument is discharged as stated in this Article or by an act or agreement with the party which would discharge an obligation to pay money under a simple contract."). To "enforce" an instrument is to compel the maker or drawer to pay the amount that the instrument obliges him to pay. *See Schranz v. I.L. Grossman, Inc.*, 412 N.E.2d 1378 (Ill. App. 1980); *Kanelos v. Tzamalis*, 219 N.E.2d 755 (Ill. App. 1966). Sterling is not trying to do any of those things; instead, it is seeking to hold the Banks liable for breaching their duty not to accept checks without the endorsements required by Illinois law. It follows that Sterling was not required to join the other named payees as plaintiffs, and therefore that its UCC claims may proceed as to the second check.

**B.  Negligence**

Sterling also alleges that the Banks are liable in negligence for accepting and paying on the checks without endorsements from all the named payees. These are the same alleged acts underlying Sterling's UCC claims. Doc. 1-1 at 5-8. Section 1-103(b) of the UCC provides that "[u]nless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity … supplement its provisions." 810 ILCS 5/1-103(b). According to the Seventh Circuit, where a UCC section "fits the facts of the case to a T, no room is left for recharacterizations intended to circumvent the statute of limitations applicable to such claims [under the UCC]. It is one thing to fill gaps in the Uniform Commercial Code and another to contradict it by calling a UCC claim something else." *Travelers Cas. & Sur. Co. of Am., Inc. v. Nw. Mut. Life Ins. Co.*, 480 F.3d 499, 505 (7th Cir. 2007) (citing California cases and a law review article that in turn cite § 1-103(b) of the UCC); *see also Crawford Supply Group, Inc. v. Bank of Am., N.A.*, 2011 WL 1131292, at *14 (N.D. Ill. Mar. 28, 2011) ("The case law is

consistent: the UCC displaces common law remedies to the extent that the facts alleged fit a provision of the UCC."); *Merrill Lynch v. Devon Bank*, 702 F. Supp. 652, 665 (N.D. Ill. 1988).

Sterling's negligence allegations fit § 3-110(d) "to a T": § 3-110(d) states that a check made out to joint payees cannot be endorsed by fewer than all of them, and Sterling alleges that the Banks were negligent in accepting the checks without endorsements from all payees—the same acts alleged to violate § 3-110(d). Doc. 1-1 at ¶¶ 32-33 (alleging that "Chase owed a duty to Sterling to not accept Check No. 1 because Sterling was a third-party beneficiary of the check which was not endorsed by all co-payees" and that "Chase owed a duty to Sterling to not accept Check No. 2 because Sterling was a payee on Check No.2 and Sterling did not endorse Check No. 2."). True, *Travelers Casualty* was concerned that the plaintiff was trying to circumvent the UCC's statute of limitations by characterizing its claim as one under the common law, and the Banks do not suggest that Sterling's UCC claims are barred on limitations grounds. But the Banks do contend that the UCC claims are thwarted by other UCC principles—those articulated in *ANICO*—and they are correct that Sterling cannot evade those principles by recharacterizing its UCC claims as common law negligence claims. Because the UCC provides the proper framework for analyzing those claims, the negligence claims against the Banks are dismissed. Because this flaw cannot be cured by repleading, the dismissal is with prejudice.

**Conclusion**

For the foregoing reasons, the Insurers' motion to dismiss is granted and the Banks' motion to dismiss is granted in part and denied in part. All of Sterling's negligence claims are dismissed with prejudice, as are the UCC claims against the Banks insofar as they relate to the first check. The UCC claims against the Banks may proceed insofar as they relate to the second check. The tortious interference claim against Chubb is dismissed without prejudice; Sterling

has until October 30, 2012, to attempt to replead that claim. If Sterling does not replead that claim, it will be dismissed with prejudice.

October 16, 2012

_____
United States District Judge